# CASE NO. 14-1417

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

ENDREW F., A MINOR, BY AND THROUGH HIS )
PARENTS AND NEXT FRIENDS, )
JOSEPH and JENNIFER F., )
  )
  )
    Appellant, )
  )
v. )
  )
DOUGLAS COUNTY SCHOOL DISTRICT RE-1, )
  )
    Appellee. )

---

Appeal from the United States District Court
for the District of Colorado
Civil Action No. 12-cv-2620-DME-MEH

---

### APPELLANT'S SUPPLEMENTAL REPLY BRIEF

---

Respectfully submitted on July 14, 2017,

**SPIES, POWERS & ROBINSON, P.C.**

*/s/ Jack D. Robinson*

Jack D. Robinson, #22037
950 South Cherry Street, Suite 700
Denver, Colorado 80246
Telephone: (303) 830-7090
Facsimile: (303) 830-7089
Attorneys for Appellant

The school district's supplemental brief mischaracterizes the record in many respects. But given space constraints and the purpose of this supplemental briefing – which takes the record as a given and assumes the Court's familiarity with it – we cannot and need not correct these mischaracterizations. Instead, this reply addresses the school district's arguments relevant to this Court's supplemental briefing order regarding the Supreme Court's decision in *Endrew F. v. Douglas County School District RE-1*, 137 S. Ct. 988 (2017).

## ARGUMENT

**1.a.** The school district does not address application of the Supreme Court's decision until page 9 of its supplemental brief. When it does, its first parry is to cast aside as dicta this Court's statement that whether Drew had been provided a FAPE presented "without question a close case." *Endrew F. ex rel. Joseph F. v. Douglas County School Dist. RE-1*, 798 F.3d 1329, 1342 (10th Cir. 2015). *See* Appellee's Supp. Br. 9-10. This effort fails.

The closeness of this case under the "merely more than de minimis" standard was plainly germane to this Court's FAPE decision. This Court began its discussion of Drew's substantive FAPE challenge by noting that "we *must* first address the parents' contention that our circuit recently shifted the standard with which we measure the substantive adequacy of an IEP" from the "merely more than de minimis"

1

standard to a "heightened" standard. *Endrew F.*, 798 F.3d at 1338 (emphasis added). The Court then discussed at considerable length why circuit precedent bound it to the lower standard. *Id.* at 1338-1340. It was only after that discussion – which would have been unnecessary if a more demanding standard would have led to the same result – that this Court concluded that the "merely more than de minimis" standard had been met.

Moreover, this Court's "close case" statement was the premise for the Court's concluding paragraph – where it applied the "merely more than de minimis" standard to the facts of this case. Thus, the Court began that paragraph by observing that Drew's was "without question a close case" and then found "sufficient indications of Drew's past progress" to render the IEP "substantively adequate" under "our prevailing standard." *Id.* at 1342. It is against this backdrop that a case previously viewed as unquestionably close and decided in the school district's favor under a standard set at just-above-de minimis should, as a matter of logic, be decided in Drew's favor when gauged against a standard that is "markedly more demanding" of the school district (and thus markedly more favorable to Drew). *See Endrew*, 137 S. Ct. at 1000.

We acknowledge the awkwardness of engaging in an extended back-and-forth with the school district about what this Court meant by its own words. But, with all respect, we believe that we are entitled to take those words at face value unless the

2

Court tells us otherwise. On those words alone, this Court should reverse.

**b.** The school district also argues that "even to the extent that this Court" accepts its prior words at face value, they are "hardly dispositive." Appellee's Supp. Br. 10. The school district thus acknowledges that the Supreme Court's new standard "*is* markedly more demanding than requiring an IEP that is only reasonably calculated to confer some benefit that is merely more than de minimis," *id.* (emphasis in original) – an admission that certainly *sounds* dispositive – and then nevertheless maintains that the Supreme Court's decision also "includes an element that fundamentally altered the judicial inquiry." *Id.* This element, the school district says, is the "*wholly distinct*" question whether Drew's IEP was calculated to provide appropriate progress in light of Drew's unique circumstances. *Id.* at 11 (emphasis in original). For this reason – and this reason alone – the school district says there is "no substantive reason" why a close case decided under this circuit's prior minimalist standard "cannot reach the same ultimate outcome" under the new, markedly-more-demanding standard. *Id.*

This argument is seriously mistaken. To be sure, as explained in our opening supplemental brief (at 9, 13), the Supreme Court in *Endrew F.* repeatedly reaffirmed that an IEP must be tailored to the child's unique needs. 137 S. Ct. at 999-1000. Contrary to the school district's assertion, however, this was nothing new (let alone something that "fundamentally altered the judicial inquiry"). The Supreme Court in *Endrew F.* repeatedly grounded the IDEA's focus on the child's "unique needs" in the

3

IDEA's text and in its decades-old decision in *Board of Education v. Rowley*, 458 U.S. 176 (1982). *See, e.g., Endrew F.*, 137 S. Ct. at 999 (quoting 20 U.S.C. § 1401(29) and citing *Rowley*, 452 U.S. at 202). An IEP is, after all, an *individualized* educational program. *See id.*

Indeed, the Supreme Court's reaffirmation of the IDEA's unique-needs-of-the-child requirement works in Drew's favor because it helps illustrate the significant differences between a "merely more than de minimis" standard and one that is markedly more demanding. When, as in Drew's case, a child's IEPs remain largely static year after year while his behavioral and academic situation is declining, those IEPs cannot have been focused on the child's unique needs. Drew's IEPs identified just one or two of his severe behavioral problems to the exclusion of all others – which might have been permissible under a "merely more than de minimis" standard requiring an IEP to seek *some* progress on any goal or objective. But those IEPs could not have been addressed to Drew's *unique* needs, which were multi-faceted. *See* Appellant's Supp. Br. 13-14. In sum, to the extent that the Supreme Court's focus on a child's unique needs affects application of the new, "markedly more demanding" standard, it can only cut further in favor of reversal.

**2.** The school district next seeks to buttress the quality of Drew's April 2010 IEP – the IEP challenged in this case – by pointing to minor changes in Drew's objectives from an earlier IEP. *See* Appellee's Supp. Br. 12. But we do not claim that

4

the IEPs remained *entirely* static year to year, only that the goals and objectives remained nearly the same, thus reflecting a failure on the school district's part to change strategies when it was obvious that Drew's situation was deteriorating.

In this regard, recall that, in the April 2010 IEP, the vast majority of Drew's IEP goals from fourth grade were "continued" – that is, not achieved. *See* App. Vol. 3, at 222-238. And Drew was not only failing to progress, but *regressing* in several areas. *Id.* at 222 (goal of retelling a passage deemed "no longer appropriate"); *id.* at 230 (regressing in goal of learning division with numbers ranging from 0-5). He was generally unable to express the cause of his feelings to others, *id.* at 271, to learn his peers' names, *id.* at 272, or even to put on a coat, *see* App. Vol. 5, at 196-97. Nowhere did the proposed April 2010 IEP seek to deal comprehensively with this regression.[1]

**3.a.** The school district acknowledges that Drew's autism manifested itself

---

[1] Two of the school district's mischaracterizations of the April 2010 IEP demand correction. First, the school district says that "Drew's language arts objectives were extremely ambitious." Appellee's Supp. Br. 13. In fact, the April 2010 IEP abandoned *all* the reading goals from the 2009 IEP. The April 2010 IEP contained only two reading goals, both more rudimentary than what was sought earlier. *Compare*, App. Vol. 3, at 223-225 and 263. Second, the school district suggests, by quoting the ALJ decision out of context, that it was regularly reporting progress "reflect[ing] a higher level of expectation" for Drew. Appellee's Supp. Br. 13. But the ALJ found that Drew's IEPs contained little or no progress reporting or measurement data, and that, where progress was reported, it was "lacking in detail" or limited to "conclusory statements about whether [Drew] was on track to meet the expectations of the plan and whether the objective had been completed or would be continued." App. Vol. 1, at 9, 15.

in many ways and that multiple negative behaviors impeded Drew's ability to learn. Appellee's Supp. Br. 16. In this respect, the difference between the "merely more than de minimis standard" and one that is "markedly more demanding" and carried out through an "appropriately ambitious" IEP, *Endrew F.*, 137 S. Ct. at 1000, is particularly salient. As we have explained – and the school district does not dispute – Drew's IEPs generally were focused on overcoming only one of Drew's severe fears and a couple of Drew's multiple negative behaviors. Appellant's Supp. Br. 4-5, 13. Under a FAPE standard in which seeking just-above-de minimis progress is lawful that approach may (or may not) be sufficient. After all, eliminating one fear or coping with one negative behavior may be viewed as *some* non-trivial progress even if it does not contribute meaningfully to the child's overall ability to learn. But in a markedly-more-demanding regime, such a patchwork approach would never be viewed as sufficient, let alone "appropriately ambitious." Endrew F., 137 S. Ct. at 1000. As the Supreme Court put it, that could be tantamount to providing almost "no education at all." *Id.* at 1001.

**b.** On this score, *Paris School District v. A.H.*, 2017 WL 1234151 (W.D. Ark. Apr. 3, 2017), issued after the Supreme Court's decision in *Endrew F.*, is instructive. There, the court noted that the Eighth Circuit's FAPE standard – which had, like this Court, looked to "merely more than de minimis" benefit – had been abrogated by the Supreme Court's "markedly more demanding" standard. *Id.* at *4. The court then

addressed whether the IEP for a child with autism had provided a FAPE. "The behavior plans developed" for the child, the court explained, "were deficient because they lumped all of [the child's] behaviors into the category of 'noncompliant behavior,' *completely ignoring the nuances of behaviors that manifest with autism.*" *Id.* at *8 (emphasis added). The court therefore agreed with a hearing officer's "conclusion that the behavior plans were inadequate, especially in light of the higher standard of *Endrew F.*" *Id.* The court in *Paris School District* thus understood what the school district here does not: Autism may present itself – as it did with Drew – with a spectrum of education-impairing behavioral problems, and a school district cannot provide a FAPE unless it seeks comprehensively to address those behaviors.

**4.a.** The school district makes a series of puzzling and inapt arguments about the supposed adequacy of the school district's November 2010 IEP and Drew's education at Firefly. Appellee's Supp. Br. 13-18. The November 2010 IEP was no more adequate than the April 2010 IEP. But the simple and dispositive answer is that the November 2010 IEP was crafted after Drew enrolled at Firefly, and so it is not relevant here.

As for Drew's rapid and substantial behavioral and educational progress at Firefly, that *is* relevant, but not for the reasons discussed by the school district. As explained in our opening supplemental brief (at 8-10, 13-14), Drew's "experience at Firefly suggested that he would benefit from a different approach" from what the

7

school district had been pursuing with just-above-trivial success for years. *Endrew F.*, 137 S. Ct. at 997.

The school district, on the other hand, apparently believes that what occurred at Firefly shows the adequacy of what it did for Drew because Firefly has a "behavioral focus" and was "not focused on the general education curriculum." Appellee's Supp. Br. 16, 17. The school district offers no support for these assertions, which presumably are meant to suggest that Firefly's program is non-academic in character. These claims are factually inaccurate. Our opening supplemental brief (at 8-9) explains that Drew made immediate behavioral *and* academic gains at Firefly, and this Court itself described Drew as "thriving" there. *Endrew F.*, 798 F.3d at 1342.

And if the school district's point is to somehow suggest that Firefly's program does not jibe with the IDEA, in an effort to restrict Drew's parents' entitlement to relief, that will not work either. As this Court has already observed, "[t]here is no contention here that Drew's placement at Firefly is not permissible under the Act." 798 F.3d at 1329.

**b.** The school district's arguments in this regard do, however, bring into relief the inadequacy of the school district's efforts to educate Drew. The IDEA is concerned with both "academic achievement and functional performance" – that is *education*. *See* 20 U.S.C. § 1414(d)(1)(A)(i)(I) and (II). The IDEA recognizes that behavioral disabilities inhibit academic achievement and functional performance. Thus, the Act

8

categorically covers children with autism, 20 U.S.C. § 1401(3)(A), while understanding that autism is a condition whose first-order ramifications are behavioral. *See* 34 C.F.R. § 300.8(c)(1)(I). Firefly recognized this too, in a way that the school district did not, because it understood that the route to genuine educational advancement for Drew was comprehensively addressing his behavioral problems that were making the ultimate goal – education – nearly impossible.

This is not to say that the school district wholly ignored Drew's plight. As noted, its plan for dealing with Drew's serious behavioral and educational problems may have sought the bare minimum. But it lacked the "appropriately ambitious" individualized educational program and "challenging objectives" that the Supreme Court's "markedly more demanding" FAPE standard demands. *Endrew F.*, 137 S. Ct. at 1000.

## Conclusion

This Court should hold that appellant Endrew F. was not provided a FAPE, reverse the district court's contrary decision, and remand for further proceedings regarding the remedies due Drew's parents in light of the school district's failure to provide Drew a FAPE.[2]

---

[2] The school district ends its brief (at 18-20) by suggesting that the "most appropriate" course may be to remand the FAPE issue to the district court. We disagree. This case has been pending for years, and this Court is well positioned to rule on the purely legal application of the Supreme Court's decision. The school

Respectfully submitted on July 14, 2017,

        **SPIES, POWERS & ROBINSON, P.C.**

        */s/ Jack D. Robinson*

        ―――――――――――――――――

        Jack D. Robinson, #22037
        950 South Cherry Street, Suite 700
        Denver, Colorado 80246
        Telephone: (303) 830-7090
        Facsimile: (303) 830-7089
        ***Attorney for Appellants***

---

district maintains that remand is appropriate because we have raised two new points – (1) that, under the IDEA, children must have the opportunity to meet challenging objectives, and that (2) an IEP must be focused on the child's unique needs. *See* Appellee's Supp. Br. 19. These are not arguments at all, let alone new ones. As explained in our opening supplemental brief (at 13), these two requirements are simply part of the Supreme Court's "markedly more demanding" FAPE standard – that is, they are at the center of what this Court asked the parties to address in their supplemental briefs. *See Endrew F.*, 137 U.S. at 1000 (discussing both attributes of the FAPE standard). And as noted (*supra* at 4), the IDEA's focus on the child's unique needs stems from the IDEA's text and the Supreme Court's 35-year-old decision in *Rowley*.

## CERTIFICATE OF SERVICE

I hereby certify that, on July 14, 2017, I electronically filed the foregoing with the Clerk of the Court using the Appellate CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Caplan & Earnest, P.C.<br>W. Stuart Stuller<br>1800 Broadway, Suite 200<br>Boulder, Colorado 80302<br>sstuller@celaw.com<br>*attorney for Appellee* | Douglas County School District<br>William Trachman<br>620 Wilcox Street, 3rd Floor<br>Castle Rock, CO 80104<br>wetracman@dcsdk12.org<br>*attorney for Appellee* |

/s/ *Mary Lakey*