IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 12-cv-2620-LTB

ENDREW F., a minor, by and through his parents and next friends,
    JOSEPH & JENNIFER F.,

                        Petitioners,

v.

DOUGLAS COUNTY SCHOOL DISTRICT RE 1,

                        Respondent.

_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

        This matter involves the review of a decision of the Office of Administrative

Courts denying Petitioner's claim under the Individuals with Disabilities Education

Act (the "IDEA"), 20 U.S.C. §§1400 and 34 C.F.R. §§300.500, *et. seq.*  Petitioner,

Endrew F., through his parents, Joseph and Jennifer F., sought reimbursement for

private school tuition and transportation costs from Respondent, Douglas County

School District RE 1 (the "District") pursuant to 20 U.S.C. §1412(a)(10)(C)(ii) and 34

C.F.R. §300.148(c).  The initial Administrative Courts Agency Decision, issued by

an Administrative Law Judge ("ALJ") following a due process hearing, concluded

that Petitioner and his parents were not entitled to reimbursement on the basis

that the District provided him a free appropriate public education ("FAPE") as is

required by the IDEA.  On September 14, 2014, I affirmed the ALJ's Agency

Decision.  *Endrew F. v. Douglas Cty. Sch. Dist. RE 1*, No. 12-CV-2620-LTB, 2014

WL 4548439 (D. Colo. Sept. 15, 2014)(unpublished). The Tenth Circuit affirmed in an opinion dated August 25, 2015. *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. Re-1*, 798 F.3d 1329 (10th Cir. Aug. 25, 2015).

Petitioner appealed and the United State Supreme Court granted *certiorari*. On March 22, 2017, the Supreme Court ruled that the legal standard used by the Tenth Circuit to assess whether a school district has provided a FAPE – whether the student's individualized education program is calculated to confer an educational benefit that is merely more than *de minimis* – is not sufficient under the substantive obligation set forth in the IDEA. The Supreme Court articulated a new standard; specifically that a FAPE is an education "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, ____ U.S. ____, 137 S.Ct. 988, 999, 197 L. Ed. 2d 335 (Mar. 22, 2017). The Court ruled that this standard is "markedly more demanding" than the merely more than *de minimis* test applied by the Tenth Circuit. 137 S.Ct. at 1000. As a result, the Supreme Court vacated the Tenth Circuit opinion and the case was remanded for further proceedings.

On remand the Tenth Circuit vacated its prior opinion, and remanded to this court "for further proceedings consistent with the Supreme Court's decision" on August 2, 2017. *Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 694 F. App'x 654 (10th Cir. Aug. 2, 2017)(unpublished). I subsequently ordered and received full supplemental briefing from the parties. After consideration of the parties' briefing,

as well as oral arguments presented to the Court on February 7, 2018, and for the reason stated, I REVERSE the ALJ's Agency Decision and rule that Petitioner and his parents are entitled to reimbursement of their private school placement from the District pursuant to 20 U.S.C. §1412(a)(10)(C)(ii) and 34 C.F.R. §300.148(c).

## I. LAW

### A. The IDEA

In order to receive federal funds to assist in educating children with disabilities under the IDEA, a State must, among other conditions, provide a FAPE to all eligible children. 20 U.S.C. §1412(a)(1). A FAPE includes both special education (defined as "specially designed instruction . . . to meet the unique needs of a child with a disability") and related services (defined as the support services "required to assist a child . . . to benefit from" that instruction). 20 U.S.C. §§1401(9),(26) & (29). Such services are provided in conformity with the child's individualized education program ("IEP"). 20 U.S.C. §1401(9)(D).

The IEP is the means by which special education and related services are "tailored to the unique needs" of a particular child as it is "the centerpiece of the statute's education delivery system for disabled children." *Endrew F. v. Douglas Cty., supra,* 137 S.Ct. at 999-1000 (citing *Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 181, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)). The IEP procedures emphasize collaboration among parents and educators and require careful consideration of the child's circumstances. 20 U.S.C. §1414.

## B. Reimbursement for Private Tuition

As relevant here, the IDEA provides for the reimbursement from a public school district when parents decide to enroll their child in a private school, without the consent of the school district, under certain circumstances. Parents are entitled to such reimbursement if: (1) the school district violated the IDEA; and (2) the education provided by the private school is reasonably calculated to enable the child to receive educational benefits. *Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.,* 540 F.3d 1143, 1148 (10th Cir. 2008). "If the parents of a child with a disability . . . enrolls the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if [it] finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C. §1412(a)(10)(C)(ii); *see also* 34 C.F.R. §300.148(c). In this case, the sole issue is whether Petitioner and his parents have met their burden to prove that the District violated the IDEA by failing to provide Petitioner with a FAPE.

## C. Standard for Determining FAPE

To determine whether a FAPE was provided, the Court must ask whether the IEP sets out an educational program that was "reasonably calculated to enable [him] to receive educational benefits." *Endrew F. v. Douglas Cty., supra,* 137 S.Ct. at 996 (quoting the standard articulated in *Bd. of Educ. v. Rowley, supra,* 458 U.S. at 207). The standard for determining whether an IEP is reasonably calculated to

enable a student to receive educational benefit was defined by the Supreme Court in this case. In *Endrew F. v. Douglas Cty.,* the Court rejected the Tenth Circuit law (as previously applied in the case) holding that a FAPE required only a determination that the child's IEP was calculated to confer an "educational benefit [that is] merely . . . more than *de minimis.*" 137 S.Ct. at 992. Rather, the Supreme Court ruled that "[t]o meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* at 999.

## D. Burden of Proof

When the administrative record is fixed, as here, the District Court conducts a "modified *de novo*" review in that it "evaluate[s] the record, and determine[s] whether a preponderance of the evidence indicates that the ALJ decision should be reversed." *Jefferson County Sch. Dist. R-1 v. Elizabeth E.*, 798 F.Supp.2d 1177, 1184 (D. Colo. 2011), *aff'd*, 702 F.3d 1227 (10th Cir. 2012). The parties challenging the IEP bear the burden of persuasion to show it was deficient. *Tyler V. ex rel. Desiree V. v. St. Vrain Valley Sch. Dist. No. RE-1J*, 2008 WL 2064758 (D. Colo. May 12, 2008)(unpublished)(*citing Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005)).

## II. BACKGROUND

An extensive recitation of the facts and the administrative record, including a summary of the educational records, Petitioner's IEP, and the testimony presented to the ALJ, is set forth in my previous order in this case. *Endrew F. v. Douglas Cty.*

*Sch. Dist. RE 1*, 2014 WL 4548439 (D. Colo. Sept. 15, 2014)(unpublished).

Petitioner was diagnosed with autism at 2 years of age, and was later also diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD"). It is undisputed that he is eligible for services under the IDEA. Petitioner attended school through second grade at Heritage Elementary, and then moved to Summit View Elementary for third and most of fourth grade, both District schools. In May of 2010, at the end of his fourth grade year, Petitioner's parents decided to withdraw him from Summit View and enroll Petitioner at the Firefly Autism House ("Firefly," previously known as the Alta Vista School), a private school that specializes in the education of children with autism. It is undisputed that Petitioner has been able to access education at Firefly where he is making academic, social and behavioral progress. Petitioner's parents believe that he stopped making meaningful educational/functional progress during second grade year, which continued until he withdrew from Summit View prior to his fifth grade year.

Petitioner and his parents argue that the final IEP presented by the District in November of 2010 was not reasonably calculated to provide him with a FAPE, as it was not substantively different than his prior IEPs that failed to evidence progress on his educational/functional goals and, in turn, had failed to provide an appropriate education in the past. Moreover, despite his maladaptive and disruptive behaviors that prevented his ability to access education, the District failed to conduct a functional behavioral assessment, implement appropriate

positive behavioral interventions, supports or strategies, or develop an appropriate Behavior Intervention Plan ("BIP"). Therefore, Petitioner's parents rejected the educational placement and IEP proposed by the District in April of 2010, and they unilaterally enrolled him at Firefly prior to the start of his fifth grade year.

Petitioner's parents subsequently sought reimbursement for Petitioner's private school tuition expenses and the reasonable transportation costs and the District refused. After a due process hearing, the ALJ with the Colorado Office of Administrative Courts issued an Agency Decision concluding that the District provided Petitioner with a FAPE and, as such, did not violate the IDEA. The ALJ found the evidence established that Petitioner made "some measurable progress" towards the academic and functional goals in his IEPs during the time that he was enrolled in the District, as well as contemplated in the April 2010 IEP drafted for his fifth grade year. The ALJ concluded that Petitioner and his parents did not meet their burden of establishing a claim for the costs of the Petitioner's unilateral private school placement under the IDEA.

Petitioner and his parents then filed this lawsuit, pursuant to 20 U.S.C. § 1415(i)(2)(A), seeking review and reversal of the ALJ's Agency Decision, and requesting an order awarding them the costs associated with his education placement. They argued that the District's failed to provide Petitioner with a FAPE. Specifically, Petitioner's parents referred me to the lack of past progress on the goals and objectives in Petitioner's previous IEPs, the inadequacy of the proposed April 2010 IEP, and the District's failure to perform a functional

behavioral assessment and develop an appropriate BIP for him. They argued that Petitioner's lack of progress, and a proposed IEP that was a continuation of that pattern, coupled with the failure to provide reporting and behavior assessment/intervention, resulted in a denial of a FAPE.

After an extensive review of the administrative record, I ruled that while the additions and modification in his IEP objectives from second grade and continuing through the April 2010 IEP proposed for his fifth grade year "did not reveal immense educational growth, they were sufficient to show a pattern of, at the least, minimal progress." Specifically, I determined that:

> While some of the objectives carried over from year to year, and some are only slightly modified, it is clear that the expectation in the objectives are increased over time. Petitioner's past IEPs revealed a pattern of some progress on his education and functional goals, and that the proposed IEP for the fifth grade continues that pattern. . . . I disagree with Petitioner's parents' argument that the modifications were insufficient to show any meaningful progress. Rather, I agree with the ALJ that Petitioner made progress towards his academic and functional goals in his IEPs and although this does not mean that he achieved every objective, or that he made progress on every goal, the evidence shows that he received educational benefit while enrolled in the District. As such, Petitioner's parents have failed to show that the District's IEPs – both past and proposed for the future – were not reasonably calculated to provide him with some educational benefit.

In so ruling, I relied upon the Tenth Circuit's standard of assessing whether a school district has provided a FAPE; specifically, whether the student's IEP was calculated to confer an educational benefit that is merely more than *de minimis*. *See Thompson R2–J Sch. Dist. v. Luke P., supra*, 540 F.3d. at 1150 (whether a proposed IEP was reasonably calculated to enable a child to receive education

benefits requires only a "basic floor of opportunity aimed at providing individualized services sufficient to provide every eligible child with some educational benefit"); *Urban by Urban v. Jefferson Cty. Sch. Dist. R-1,* 89 F.3d 720, 727 (10th Cir. 1996) (requiring that the educational benefit mandated by IDEA must merely be "more than *de minimis*"). Thus, I ruled that because Petitioner and his parents had failed to meet their burden to prove that the District failed to provide a FAPE, they were not entitled to reimbursement of his tuition and transportation costs. *Endrew F. v. Douglas Cty., supra*, 2014 WL 4548439.

The Tenth Circuit, applying the same standard, affirmed. It found "sufficient support in the record . . . that the child received some educational benefit while in the District's care and that is enough to satisfy the District's obligation to provide a [FAPE]." The Tenth Circuit concluded that "[t]his is without question a close case, but we find there are sufficient indications of [Petitioner's] past progress to find the IEP rejected by the parents substantively adequate under our prevailing standard" and "[b]ecause the IDEA provides that reimbursement is due only where the school district has not made a FAPE available to the child, we find the parents are not entitled to the compensation they seek." *Endrew F. v. Douglas Cty., supra,* 798 F.3d at 1343.

The Tenth Circuit decision was then appealed to the United States Supreme Court. The issue before the Court was the applicable standard required for a school district to meet its substantive obligation to provide its students with a FAPE under the IDEA. As noted above, the Supreme Court held that IDEA requires "an

educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." The Supreme Court indicated that "this standard is markedly more demanding than the 'merely more than *de minimis*' test applied by the Tenth Circuit." *Endrew F. v. Douglas Cty., supra*, 137 S.Ct. at 1000. The Tenth Circuit, on remand, vacated its prior opinion and remanded the matter back to this Court for further proceedings consistent with the Supreme Court's decision. *Endrew F. v. Douglas Cty., supra*, 694 F. App'x at 655.

### III. NEW STANDARD

The issue before me now is whether the IEP offered by the District to the Petitioner in this case at the time his parent withdrew him from public school was reasonably calculated to enable him to make progress appropriate in light of his circumstances.

The contours of this new legal standard are set out by the Supreme Court as follows. First, for a child fully integrated in the regular classroom, an IEP typically should be "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Endrew F. v. Douglas Cty., supra*, 137 S.Ct. at 1000 (quoting *Board of Ed. v. Rowley, supra,* 458 U.S. at 204). As to a child who is not "fully integrated in the regular classroom and not able to achieve on grade level" the "educational program must be appropriately ambitious in light of his circumstances, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom." *Id.* (rejecting the District's argument that "an IEP need not promise any particular *level* of benefit, so long as it is reasonably

calculated to provide *some* benefit, as opposed to *none*.")

> The qualification that an IEP is "reasonably calculated" reflects:

> a recognition that crafting an appropriate program of education requires a prospective judgment by school officials [and] contemplates that this fact-intensive exercise will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians. Any review of an IEP must appreciate that the question is whether the IEP is reasonable, not whether the court regards it as ideal.

*Endrew F. v. Douglas Cty., supra*, 137 S.Ct. at 999 (citations omitted).

An IEP must also enable a child to "make progress," which reflects "the essential function of an IEP [which is] to set out a plan for pursuing academic and functional advancement." *Id.* (citing 20 U.S.C. §1414(d)(1)(A)(i)(I)–(IV); *Board of Ed. v. Rowley, supra,* 458 U.S. at 179).

Finally, the Supreme Court ruled that the progress contemplated by the IEP must be "appropriate in light of the child's circumstances" based on the IDEA's focus on the particular child. Although the Supreme Court has previously provided guidance as to what "appropriate progress" looks like when a child is fully integrated into the regular classroom in *Board of Ed. v. Rowley, supra* – typically, "providing a level of instruction reasonably calculated to permit advancement through the general curriculum" – "it did not provide concrete guidance with respect to a child who is not fully integrated in the regular classroom and not able to achieve on grade level." *Endrew F. v. Douglas Cty., supra*, 137 S.Ct. at 1000. The Court in this case ruled that even if grade-level advancement is not a reasonable prospect for a child, the general standard is that:

his educational program must be appropriately ambitious in light of his circumstances, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom. The goals may differ, but every child should have the chance to meet challenging objectives.

*Id.* In setting the parameters of this general standard, the Court noted that:

whatever else can be said about it, this standard is markedly more demanding than the 'merely more than *de minimis*' test applied by the Tenth Circuit. It cannot be the case that the Act typically aims for grade-level advancement for children with disabilities who can be educated in the regular classroom, but is satisfied with barely more than *de minimis* progress for those who cannot.

When all is said and done, a student offered an educational program providing 'merely more than *de minimis*' progress from year to year can hardly be said to have been offered an education at all. For children with disabilities, receiving instruction that aims so low would be tantamount to 'sitting idly . . . awaiting the time when they were old enough to drop out.'

*Id.* at 1000-01 (*quoting Board of Ed. v. Rowley, supra,* 458 U.S. at 179).

However, the Court also rejected Petitioner's parents' position that a FAPE requires "an education that aims to provide a child with a disability opportunities to achieve academic success, attain self-sufficiency, and contribute to society that are substantially equal to the opportunities afforded children without disabilities." *Id.* at 1001. Instead, the Supreme Court declined to define or elaborate on what appropriate progress will look like from case to case because "[t]he adequacy of a given IEP turns on the unique circumstances of the child for whom it was created."

This absence of a bright-line rule, however, should not be mistaken for 'an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.' . . . At the same time, deference is based on the application of expertise and the exercise of judgment by school authorities. The Act

vests these officials with responsibility for decisions of critical importance to the life of a disabled child. The nature of the IEP process, from the initial consultation through state administrative proceedings, ensures that parents and school representatives will fully air their respective opinions on the degree of progress a child's IEP should pursue.

By the time any dispute reaches court, school authorities will have had a complete opportunity to bring their expertise and judgment to bear on areas of disagreement. A reviewing court may fairly expect those authorities to be able to offer a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances.

*Endrew F. v. Douglas Cty., supra*, 137 S.Ct. at 1001-02 (*quoting Board of Ed. v. Rowley, supra*, 458 U.S. at 206).

# IV. ANALYSIS

Therefore, the issue in this case is whether the IEP offered to Petitioner in April 2010 constituted an educational program that was reasonably calculated to enable him to make progress that was appropriate in light of his circumstances.

Petitioner and his parents contend that his educational program at the District was clearly not reasonably calculated to enable him to make anything more than minimal  progress.   In support of this argument, Petitioner relies upon the Tenth Circuit's ruling that "[t]his is without question a close case, but we find there are sufficient indications of Petitioner's past progress to find the IEP rejected by the parents substantively adequate under our prevailing standard," *Endrew F. v. Douglas Cty., supra*, 798 F.3d at 1342, together with the Supreme Court's ruling that its new standard is "markedly more demanding" than the merely more than *de minimis* test applied by the Tenth Circuit.  *Endrew F. v. Douglas Cty., supra*, 137

13

S.Ct. at 1000.

The District contends, however, that even under the new legal standard Petitioner cannot meet his burden to prove that the District failed to provide him with a FAPE, in that he cannot show that the April 2010 IEP was not reasonably calculated to enable him to make appropriately ambitious progress in light of his specific circumstances. The District argues that although the IEP it offered to Petitioner at the time his parents placed him at Firefly in April of 2010 was not "ideal," it was a reasonable calculation of educational progress. The District points to various objectives in the April 2010 IEP – in reading comprehension, writing, math, and communication, as well as inter-/intrapersonal goals based on his behavior problems – that were increased or enhanced from the prior IEP objectives. [Doc #52 pg 10-12] The District further argues that Petitioner's circumstances results in significant impediments to his ability to access and participate in his education. These include his autism, ADHD, "exceedingly low cognitive skills," serious behavior problems, and his pronounced sensory needs. The District contends that the April 2010 IEP addressed Petitioner's special and unique circumstances and it provides for challenging educational and functional objectives given those restrictive circumstances. In support of this argument, the District refers me to recent decisions that have applied the new standard and determined that the student made sufficient progress, when such progress/goals were viewed relative to the severity/impact of his or her disabilities, so that the school provided a FAPE. *See e.g. Bd. of Educ. of Albuquerque Pub. Sch. v. Maez*, 2017 WL 3278945

(D.N.M. 2017)(unpublished) (ruling that "in light of these unique circumstances, the Court finds that [the student] was making some meaningful progress, even if it was not the exact type of progress that Parents would have wanted").

I agree with Petitioner, however, that the April 2010 IEP offered to him by the District in this case was insufficient to create an educational plan that was reasonably calculated to enable Petitioner to make progress, even in light of his unique circumstances, based on the continued pattern of unambitious goals and objectives of his prior IEPs.

My previous ruling in this case was that while the additions and modifications in his IEP objectives from year to year "did not reveal immense educational growth, they were sufficient to show a pattern of, at the least, minimal progress." *Endrew F. v. Douglas Cty., supra,* 2014 WL 4548439. This was evidenced by small advances or alterations to Plaintiff's IEP objectives starting in the second grade IEP through the proposed objectives contained in the April 2010 IEP. For example, "while some of the [math] objectives carried over from year to year, and some are only slightly modified, it is clear that the expectation in the objectives are increased over time." *Id.* It was evident, however, that those changes were very limited. As a result, I determined that the pattern of his IEPs showed that Petitioner received "some educational benefit," *citing Thompson R2-J Sch. Dist. v. Luke P., supra*, 540 F.3d. at 1150, which required only a "basic floor of opportunity aimed at providing individualized services sufficient to provide every eligible child with some educational benefit." *Id.*

The minimal progress revealed in Petitioner's educational plan is insufficient, however, to show that the April 2010 IEP proffered by the District created an educational plan that was reasonably calculated to enable him to make progress. While Petitioner's educational program must be appropriately ambitious in light of his circumstances, the Supreme Court was clear that every child, including Petitioner, should have the chance to meet challenging objectives. In this case, Petitioner's past educational and functional progress – as evidenced by the changes to his yearly IEPs after second grade – was minimal at best. Those changes consisted of only updates and minor or slight increases in the objectives, or carrying over the same goals from year to year, or abandonment if they could not be meet. The April 2010 IEP was clearly just a continuation of the District's educational plan that had previously only resulted in minimal academic and functional progress.

In addition, I agree with Petitioner that the minimal progress evidenced in his educational plan, and culminating with the proposed April 2010 IEP, was clearly impacted by the District's lack of success in providing a prpgram that would address Petitioner's maladaptive behaviors. During my initial review of this case, I found that Petitioner's increasingly disruptive behaviors were impacting his ability to meet his educational goals. The record revealed that the District was attempting to address Petitioner's behavioral issues, as I determined that "the District was, at the very least, addressing Petitioner's behavioral issues and that a new behavior plan was deemed necessary and was in progress at the time that Petitioner withdrew from the District." Thus, the evidence revealed that while the District

was unable "to manage Petitioner's escalating behavioral issues at the time of his withdrawal, it was in the process of reassessing his BIP in order to address the issue" and I therefore ruled that the Petitioner was unable to show that the District's inability to manage his behaviors denied him a FAPE. *See Endrew F. v. Douglas Cty. , supra,* 2014 WL 4548439. At oral arguments the District conceded that there was no formal plan addressing Petitioner's behavioral issues at the time his April 2010 IEP was proposed, but it argued that functional behavioral assessment principles and goals were imbedded into his IEPs and were being implemented with the cooperation of Petitioner's parents. The District again noted that a formal BIP was in progress.

The District's inability to develop a formal plan or properly address Plaintiff's behaviors that had clearly disrupted his access to educational progress starting in his second grade year does, under the new standard articulated by the Supreme Court in this case, impact the assessment of whether the educational program it offered to Petitioner was or was not reasonably calculated to enable him to make progress appropriate in light of his circumstances. The District's inability to properly address Petitioner's behaviors that, in turn, negatively impacted his ability to make progress on his educational and functional goals, also cuts against the reasonableness of the April 2010 IEP. *See Paris Sch. Dist. v. A.H. by & through Harter*, 2017 WL 1234151 (W.D. Ark. Apr. 3, 2017) (unpublished)(agreeing with the Hearing Officer's conclusion that the student's behavior plans were inadequate, especially in light of the higher standard articulated by the Supreme Court).

When initially deciding to this case, I determined that the IEP provided to Petitioner by the District revealed only minimal progress, but that I was constrained to rule in favor of the District in light of the Tenth Circuit precedent that required only that an IEP was calculated to confer an educational benefit when progress was merely more than *de minimis.* Based on this, I reject the District's contention that I should not apply or consider the language in the Tenth Circuit's opinion that "[t]his is without question a close case" because it is unbinding *dicta.* The Tenth Circuit's characterization of this case conforms with my review and conclusions regarding the nature of the evidence of record. And, it is axiomatic that because this was "without a question a close case" under the previous "merely more than *de minimis* standard," the facts of this case do not meet the rigor of the undeniably higher standard set by the Supreme Court. *Endrew F. v. Douglas Cty., supra*, 137 S.Ct. at 1000 (ruling that the new standard "is markedly more demanding"). I reject the District's claims, at oral argument, that my prior ruling was a determination, based on my findings of fact, that Petitioner made "meaningful" progress.

I also reject the District's argument that because it is uncontested that Petitioner's IEP team followed and complied with all the IDEA's procedural requirements when creating the April 2014 IEP – which, in turn, mandates extensive data collection and analysis – that the 'Distrcit's determinations as to the appropriateness of the objectives and goals should be given deference or "goes a long way" when assessing the extent of Petitioner's progress. *See Bd. of Educ. v. Rowley,*

*supra*, 458 U.S. at 206 (indicating that compliance with the procedures "would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP"); *see also Endrew F. v. Douglas Cty., supra*, 137 S.Ct. at 1001 (noting that "deference is based on the application of expertise and the exercise of judgment by school authorities").  While I am not faulting the IEP team's work, nor am I implying that they were looking to provide Petitioner with "only the bare minimum," the April 2010 IEP that was developed was a continuation of the poor progress on his educational and functional goals of his past IEPs.  And, as such, the District was not successful in creating an educational program that was reasonably calculated to enable Petitioner to make progress in light of his circumstances, in order to provide him with a substantive FAPE

Finally, I note the District's argument that Petitioner's progress since he enrolled at Firefly is not relevant to the inquiry of whether the educational program it offered to Petitioner was or was not reasonably calculated to enable him to make progress appropriate in light of his circumstances.  The District contends that whatever the quality of the services provided to Petitioner at Firefly, they cannot serve as the benchmark or as comparison for the appropriateness of the District's educational plan in the April 2010 IEP.  The record at the time of my initial review was that the parties agreed that Petitioner was receiving a FAPE and making educational progress at Firefly.  Although Petitioner's parents now aver that he has experienced rapid and substantial progress in his educational, functional and behavioral objectives at Firefly – in support of their argument that the District

could have provided him with more challenging functional and academic goals despite his unique circumstances – I do not consider this claim as I have ruled that the District failed to provide Petitioner with a FAPE without considering his subsequent progress/advancement at Firefly.

Accordingly, I conclude that Petitioner and his parent have met their burden to prove that the District's April 2010 IEP failed to create an educational plan that was reasonably calculated to enable Petitioner to make progress, even in light of his unique circumstances. The IEP was not appropriately ambitious because it did not give Petitioner the chance to meet challenging objectives under his particular circumstances. Specifically, the IEP proposed by the District was not reasonably calculated for Petitioner to "achieve academic success, attain self-sufficiency, and contribute to society that are substantially equal to the opportunities afforded children without disabilities." *Endrew F. v. Douglas Cty., supra,* 137 S.Ct. at 1001. As such, the District failed to provide Plaintiff with a FAPE.

## V. DAMAGES

As a final matter, I address the District's claims related to the limitation of Petitioner's damages if I determine, as I have, that Petitioner's educational plan, culminating in the proposed April 2010 IEP, was not providing Petitioner with a FAPE in violation of the IDEA.

The District first contends that because Petitioner "disclaimed" review of an IEP subsequently offered to him by the District in November 2010 on appeal to the

Tenth Circuit – by arguing that although it was no more adequate that the April 2010 IEP, it was crafted after Petitioner enrolled at Firefly and "so it is not relevant here" – Petitioner is only entitled to tuition reimbursement from enrollment of Firefly in April 2010 until November of 2010. The District provides me with no authority for its claim that Petitioner's alleged failure to challenge the November 2010 IEP in the appellate process would foreclose its right to reimbursement under 20 U.S.C. §1412(a)(10)(C)(ii); *see also* 34 C.F.R. §300.148(c).

Instead, the law is clear that parents are entitled to reimbursement under the IDEA if: (1) the school district violated the IDEA; and (2) the education provided by the private school provides the child with a FAPE in that it is reasonably calculated to enable the child to receive educational benefits. *Thompson R2-J Sch. Dist. v. Luke P., supra*, 540 F.3d at 1148; *L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 978 (10th Cir. 2004). Thus, Petitioner and his parents are entitled to reimbursement for the reasonable costs of his education at Firefly. They are also eligible for reasonable attorneys' fees and litigation costs. *See* 20 U.S.C. § 1415(i)(3)(B). As a result, in order to fashion an award in favor of Petitioner and his parents, and against the District, I will order the parties to provide briefing and accounting for the imposition of a monetary award against the District pursuant to 20 U.S.C. §1412(a)(10)(C)(ii) and 34 C.F.R. §300.148(c).

ACCORDINGLY, on remand from the Tenth Circuit, I REVERSE the Administrative Court Agency Decision denying Petitioner and his parents' request for reimbursement of his tuition and transportation costs to attend school at Firefly, and I ORDER that Petitioner and his parents are entitled to reimbursement of their private school placement from the District pursuant to 20 U.S.C. §1412(a)(10)(C)(ii) and 34 C.F.R. §300.148(c), as well as reasonable attorneys' fees and litigation costs pursuant to 20 U.S.C. § 1415(i)(3)(B).

As a result, I ORDER Petitioner, Endrew F., through his parents, Joseph and Jennifer F., to file a brief and accounting of the damages, attorney fees, and costs they seek to recover from Respondent, Douglas County School District RE 1, **on or before March 5, 2018.** Respondent shall file a response brief and any objections to Petitioner's accounting **on or before March 19, 2018.** Petitioner may file a reply brief **on or before March 29, 2018**.

Dated: February __12__ , 2018, in Denver, Colorado.

BY THE COURT:

___s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE